IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EUGENE DELAMARTER, III,           : No. 3:16cv665
and FRANCINE CUEBAS, his wife,    :
             Plaintiff : (Judge Munley)
                        :
     v.                           :
                        :
KELSEY P. COUGLAR and             :
CARGO TRANSPORTERS, INC.,         :
             Defendants :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Plaintiff Eugene Delamarter, III and his wife Francine Cuebas claim that Delamarter suffered serious and permanent injuries when the defendants' tractor-trailer rear-ended his vehicle. Plaintiffs allege that Defendant Kelsey P. Couglar operated the truck and fell asleep behind the wheel.[1] Cargo Transporters owned the truck and employed Couglar. Before the court for disposition is the motion for partial summary judgment filed by Defendants Kelsey P. Couglar and Cargo Transporters, Inc. (hereinafter collectively "defendants"). The motion attacks the punitive damages claims against the defendants and, in the alternative, asks for a bifurcation of the trial with the issue

---

[1] Defendant Couglar's name is sometimes spelled "Cougler" by the parties. For the purpose of consistency we will spell the defendant's name with an "a", as it appears in the Amended Complaint. (Doc. 9, Am. Compl. ¶ 3).

of punitive damages being presented only after the issue of compensatory damages. The motion has been fully briefed and is ripe for disposition.

**Background**

Defendant Cargo Transporters, Inc. employed Defendant Couglar as a truck driver. (Doc. 40, Def. Statement of Material Facts (hereinafter "SOF") ¶ 3).[2] A tractor-trailer operated by Defendant Couglar collided with Plaintiff Delamarter's vehicle On May 2, 2014, shortly before 5:30 a.m. on Interstate 84 in Milford Township, Pike County, Pennsylvania. (Id. ¶ 5). Defendant Couglar was operating a 2013 Freightliner Cascadia tractor and pulling a Wabash trailer eastbound on Interstate 84. (Id. ¶ 9).

At the time, the interstate was reduced to one lane because of construction. (Id. ¶ 6). Plaintiff Eugene Delamarter (hereinafter "plaintiff") was operating a Nissan Frontier pickup truck. (Id. ¶ 7). Plaintiff was stopped in traffic. Traffic had backed up due to an accident farther down the road. (Id. ¶ 8). Defendant Cougler came upon the stopped traffic, but he did not bring his tractor-trailer to a stop, so it rear ended plaintiff's pickup truck. (Id. ¶¶ 17, 20). Plaintiff claims that the reason defendant could not bring his tractor-trailer to a stop is that he had been asleep at the wheel. (Id. ¶ 22). Defendants disagree.

---

[2] We will cite to the defendants' statement of material facts for these background facts. The plaintiffs agree with many of the facts set forth by the defendants, however, where appropriate we will note any disagreement plaintiffs may have.

Plaintiff alleges that the accident caused him to suffer serious permanent personal injuries including: neck pain, back pain, shoulder pain, cervical disc herniations, a small partial thickness tear to the left rotator cuff, anxiety, depression, post-traumatic stress disorder, spinal cord injuries, pain, muscle spasms, and a shock to his nerves and nervous system. (Doc. 9, Am. Compl. ¶ 18).

Accordingly, plaintiff filed a three-count amended complaint against the defendants. Count One is a negligence cause of action against Defendant Couglar and Count Two is a negligence cause of action asserted against Defendant Cargo Transporters, Inc. Count Three is a loss of consortium claim on behalf of Delamarter's wife, Plaintiff Francine Cuebas. The plaintiff seeks punitive damages under both counts one and two. At the close of discovery, the defendants filed the instant motion for summary judgment on the punitive damages claim or in the alternative a bifurcation of the trial, bringing the case to its present posture.

**Jurisdiction**

This court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiffs Eugene Delamarter and Francine Cuebas are citizens of the Commonwealth of Pennsylvania. (Doc. 9, Am. Compl. ¶¶ 1-2). Defendant Kelsey P. Couglar is a citizen of North Carolina. (Id. ¶ 3). Defendant Cargo

Transporters, Inc. is a North Carolina corporation with a principal place of business located in Claremont, North Carolina. (Id. ¶ 4). Because complete diversity exists among the parties, and the amount in controversy exceeds $75,000, the court has jurisdiction. See 28 U.S.C. § 1332 ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . citizens of different States[.]").

As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted above, the plaintiff seeks punitive damages under both Count One and Count Two. Under Pennsylvania law, punitive damages "are awarded

5

only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference to the interests of others." Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097-98 (Pa. 1985). Reckless indifference refers to a conscious disregard of a risk known to the defendant or a risk "so obvious that he must...have been aware of it, and so great as to make it highly probable that harm would follow." Evans v. Phila. Transp. Co., 212 A.2d 440, 443 (Pa. 1965). In evaluating the appropriateness of a punitive damages claim, the Court must consider not only the offense itself, but also the circumstances surrounding it, including the wrongdoers' motives and the relations between all the parties involved. Schwartz v. Rockey, 932 A.2d 885, 890 (Pa. 2007); see also Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984) (citing Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963)).

Defendants seek summary judgment on the punitive damages claim in each count. We will discuss them separately.

**A. Count One**

Count One of the amended complaint is a negligence claim against Defendant Couglar, the driver of the truck which struck plaintiff's vehicle. Plaintiff's position is that the Couglar fell asleep behind the wheel of the truck, causing the accident and that punitive damages are appropriate. Defendant first attacks whether the plaintiff can establish that Couglar fell asleep behind the

wheel and second, even if he did fall asleep, whether punitive damages are appropriate.

   **1. Asleep behind the wheel**

First, we will discuss whether plaintiff can establish whether Couglar fell asleep while driving the truck. A review of the evidence submitted by the parties indicates that whether the plaintiff fell asleep is an issue of fact. On the one hand, the police report indicates that the passenger in the tractor-trailer, Michael Harrison, told the Pennsylvania State Police Officer investigating the accident that Couglar was very tired when he took over driving and that he believed Couglar had fallen asleep behind the wheel. (Doc. 47-2, Pl. Ex. B, Comm. of PA Police Crash Report at 11). The police report also indicates that Couglar himself thought that he had "fell asleep or zoned out." (Id.)

To counter this evidence, defendant presents the deposition of Harrison, who indicates that he never told the state police that Couglar was very tired and had probably fallen asleep. (Doc. 40-3, Def. Ex. C, Harrison Dep. at 46-47). Additionally, Defendant Couglar now claims to have no memory of the accident.

At his deposition, however, the state trooper who interviewed Harrison stated that he would not have placed that information in his police report if Harrison had not actually said it. (Doc. 47-1, Pl. Ex. A, Corporal Carroll Dep. at

7

35). He further stated that if Harrison disputed saying it, then he (the police officer) would dispute that denial. (Id.)

Plaintiff also cites to a "drive cam video" to establish that Couglar had fallen asleep. (Def. Ex. G). Plaintiff argues that the video establishes that Couglar was asleep just prior to the accident and only woke up when the truck hit rumble strips alongside the road. Then he tried to avoid the accident, but it was too late. Defendant on the other hand argues that the video establishes that Couglar was not asleep. After a review of the video, we find that it is not conclusive. It will be up to the parties to argue to the factfinder exactly what is shown by the video.

Based upon the above, we find that the plaintiff has sufficient evidence for a factfinder to conclude that Couglar caused the accident by falling asleep while driving. Accordingly, summary judgment in favor of the defendants on this point is inappropriate and will be denied.

### 2. Punitive damages - Defendant Couglar

Next, defendants argue that even assuming that Couglar fell asleep, the imposition of punitive damages is nonetheless inappropriate. Defendants liken this case to the Third Circuit decision in Burke v. Maassen, 904 F.2d 178 (3d Cir. 1990). In Burke, the jury awarded punitive damages against a defendant, a truck driver, who struck and killed a person standing on the side of the Pennsylvania Turnpike. Id. at 179. The defendant admitted that he had been speeding. Also,

he had driven over fourteen hours that day which violated a federal motor carrier safety regulation. He further had falsified his log to give the appearance that he had not violated the regulations. Id. 179-180. Moreover, circumstantial evidence indicated that he had fallen asleep while driving, drifted onto the shoulder of the road and struck the decedent. Id. at 180.

The Third Circuit applied Pennsylvania law and found that these facts did not support an award of punitive damages. The court focused its analysis on the meaning of "reckless indifference to the rights of others" which, as set forth above, can be a basis for punitive damages. Id. at 181. The Third Circuit explained that a 1985 plurality opinion from the Pennsylvania Supreme Court held that punitive damages may only be awarded under this standard where "the evidence shows the defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to, that risk." Id. The court reasoned that the evidence failed to establish that the truck driver possessed a conscious appreciation for the risks inherent in driving more than ten (10) consecutive hours in violation of the regulations. Id. at 183. A reasonable man reading that regulation may have realized that the regulation was meant to avoid fatigue and accidents, but there was no evidence that the

driver in that case, himself, appreciated the risk of violating the rule. Id. Thus, the award of punitive damages was inappropriate. Id.

Defendants argue that Burke is right on point with the case at issue. Even if Defendant Couglar drove while extremely tired, no evidence indicates that he had a conscious appreciation of the risk of falling asleep and striking another vehicle. We find, however, that Burke is different from the case before the court and it is not as broad as the defendants argue.

Burke specifically dealt with violating a regulation and the absence of evidence that the driver knew that violating the regulation could lead to fatigue and an accident. In the instant case, the evidence can establish that Couglar knew he was "very tired" when he started driving.[3] It is axiomatic that driving while very tired can lead to the driver falling asleep and having an accident. As explained by the Pennsylvania Supreme Court, a driver is "chargeable with knowledge that an individual in a state of exhaustion is likely to fall asleep." Bernosky v. Greff, 38 A.2d 35, 36 (Pa. 1944). So here, we believe recklessness can be established.

---

[3] The jury could believe that Harrison told the state police that Couglar was very tired when he started driving. It could be inferred that Harrison got this information either because Couglar told him or because observing Couglar he noted that he appeared very tired. Either way, Couglar can be charged with knowledge of his being very tired. If he told Harrison he was tired, then clearly he himself knew he was tired. If Harrison could determine from Couglar's manner that he was tired, the jury can infer that Couglar also knew he was tired.

10

Pennsylvania Supreme Court addressed recklessness and falling asleep while driving in the criminal context in Commonwealth of Pennsylvania v. Huggins, 836 A.2d 862 (Pa. 2003).  The issue in that case was whether the defendant engaged in reckless conduct when he fell asleep in a van carrying twenty-four occupants, most of them children.  Id. at 863.  He was speeding and crashed, resulting in two deaths.  Id.  The Commonwealth sought to charge him with involuntary manslaughter which requires a *mens rea* of recklessness.[4]  Id. at 864-865.  The court found that it is fair to infer that in falling asleep the defendant had ignored the warning signs of sleep and that the very fact that he fell asleep evidences a conscious decision to run that risk.  Id. at 870.

The court stops short, however, from holding that falling asleep alone is enough to raise a jury question of recklessness.  It did not have to so decide because other factors indicating recklessness were present in that case, for example, defendant was driving a van full of children who were not secured by safety belts;  he drove at an excessive rate of speed; and then allowed himself to fall asleep.  Id.  "Each of these additional factors, beyond the mere fact of falling asleep at the wheel increased the risk of collision, injury, and death.  Moreover, each was a circumstance within [defendant's] knowledge and control.  Viewed in

---

[4] The statute requires "recklessness or gross negligence" but the court points out that "reckless" and "grossly negligent" define the equivalent state of mind for purposes of the involuntary manslaughter provision.  Huggins, 836 A.2d at 867-68.

11

their totality, the circumstances here reveal a pattern of conscious disregard for circumstances that placed the lives of these children in increasing danger." Id. at 871.

The instant case is similar. Not only did Defenadnt Couglar fall asleep at the wheel of a large tractor-trailer, the evidence and circumstances support a finding that Defendant Couglar knew he was sleepy and yet continued driving nonetheless. Thus, Couglar made a conscious decision to ignore the grave danger posed to other motorists and their passengers. The factfinder could find that he ignored the risk of falling asleep and a large tractor-trailer striking much smaller and vulnerable vehicles. Additionally, he understood that that it is a violation of Federal Motor Carrier Safety Regulations to operate a truck in a fatigued condition. (Doc. 47-3, Def. Couglar Dep. at 57-58). It is expected that traffic may slow down or stop in areas of road construction. Couglar knew of lane reductions due to construction in the area of the accident. He received citations for speeding and careless driving in relationship to the accident. (Id. at 57-58, 140-141). He pled guilty to both. (Id. at 140-141). Additionally, it appears from the video of the accident that it was dark out when the accident occurred.

In sum, the evidence could establish that Defendant Couglar ignored the signs of fatigue and continued to drive a large tractor-trailer, at a speed in excess of the posted speed limit, in the dark, toward an area of road construction and

lane restrictions. All of these circumstances could lead the jury to conclude that the defendant acted recklessly. And it is unquestionable that grave damage is likely to result when a tractor-trailer crashing into an ordinary automobile – an eminently foreseeable result when a truck driver falls asleep at the wheel.

Accordingly, a factfinder could find from the evidence that Defendant Couglar acted in reckless disregard to the rights of others. Summary judgment to the defendants on the issue of punitive damages against Defendant Couglar will be denied.

**B. Count Two Punitive damages – Defendant Cargo Transporters, Inc.**

Plaintiffs also assert a punitive damages claim against Defendant Cargo Transporters (hereinafter "CT" or "Defendant CT"). The law provides that as Couglar's employer, CT may be held liable vicariously for any punitive damages found against him. Shiner v. Moriarty, 706 A.2d 1228, 1240 (Pa. Super. Ct. 1998). Moreover, "there is no requirement that an agent commit a tortious act at the direction of his principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him." Id. Thus, if Couglar is found directly liable for punitive damages, CT may be found vicariously liable for the punitive damages. We are left with the issue of whether CT may be held directly for punitive damages for its actions.

13

Defendant CT argues that no evidence supports the contention that they acted recklessly indifferent to the plaintiff's safety and thus move for summary judgment on the issue of direct liability for punitive damages. Specifically, CT argues that no evidence indicates that CT had a conscious appreciation that Couglar would drive while fatigued. Additionally, plaintiff has not identified any issues with Couglar's compliance with hours of service regulations that could have potentially put CT on notice of a fatigue issue. In short, CT argues that plaintiff has no evidence that CT had a conscious appreciation that the driver would engage in the conduct that allegedly caused the accident.

Plaintiff, on the other hand, indicates that CT provided inadequate training to the defendant driver with regard to operating his vehicle in a construction zone, keeping his vehicle under proper and adequate control, and the purpose of rumble strips. Plaintiffs, however, do not explain how this alleged lack of training would lead Defendant Couglar to drive while fatigued.

Next, plaintiff avers that Defendant CT received a citation for allowing a fatigued driver to operate one of its motor vehicles in violation of 49 C.F.R. § 392.3. This violation of the regulations amounts to evidence of the trucking company's recklessness according to the plaintiff. We disagree.

Despite the citation, plaintiff points to no evidence that Defendant CT did anything that would warrant punitive damages. Plaintiffs would have us interpret

14

the citation, which was issued after the accident, as evidence that Defendant CT had a subjective belief that Defendant Couglar would operate the truck while fatigued.  This issuance of the citation, however, after the accident occurred does not make it more likely that the trucking company knew that Defendant Couglar was driving while fatigued on the date of the accident.   Thus, plaintiffs lack of evidence on punitive damages and judgment will be granted to Defendant CT on the direct liability claim of punitive damages.  They may still, however, be held vicariously liable for punitive damages awarded against Defendant Couglar.

**C.  Bifurcation**

Finally, the defendants raise the issue of bifurcation.  They argue that if the punitive damages claims remain in the case, then we should bifurcate the trial and try plaintiff's compensatory damages claims before plaintiff's punitive damages claims.  We disagree.

Rule 42 of the Federal Rules of Civil Procedure provides for bifurcated trials as follows: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  The decision to bifurcate is left in the trial court's discretion and must be decided on a case-by-case basis.  <u>Idzojtic v. Pa. R.R. Co.</u>, 456 F.2d 1228, 1230 (3d Cir. 1972); <u>see</u> <u>also</u> <u>Barr Labs, Inc. v. Abbott Labs</u>, 978 F.2d 98, 105 (3d Cir. 1992)

15

(stating that a district court's decision to bifurcate a trial is reviewed for an abuse of discretion). In exercising such discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition and economy of resources." Emerick v. U.S. Suzuku Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).

Defendants point out that they concede liability. The jury will only be tasked with determining damages. These include plaintiff's compensatory damages, that is, damages that will compensate him for the injuries that are causally related to the accident. The other issue will be punitive damages. In determining punitive damages the jury will have to consider evidence of recklessness and outrageousness that is irrelevant to the compensatory damages, but prejudicial to the defendants. Bifurcating the trial will limit potential prejudice against the defendants without causing any prejudice to the plaintiffs. Thus, defendants seek to bifurcate the trial into two sections, one dealing with compensatory damages and the other dealing with punitive damages.

As noted above, it is within the court's discretion to bifurcate the trial. We find that bifurcation is not necessary in the instant case. The interests of convenience to the parties, the court and the jury, expedition and economy of resources outweigh any alleged prejudice. We are confident that the trial will be

16

fair to all parties and we will construct a jury charge and verdict slip that will prevent prejudice to the defendants. Thus, the motion to bifurcate will be denied.

**Conclusion**

For the reasons set forth above, we will deny in part and grant in part the defendants' motion for summary judgment. The jury will decide whether punitive damages are appropriate against the Defendant Couglar and vicariously against Defendant CT. We will, however, grant summary judgment to the defendants with regard to direct liability for punitive damages against Defendant CT. Lastly, we will deny the request to bifurcate. An appropriate order follows.

**Date: February 20, 2018**                              **s/ James M. Munley**
                                                         **JUDGE JAMES M. MUNLEY**
                                                         **United States District Court**